### BROOKS v. BONNER et al.

(Court of Civil Appeals of Texas. Galveston. June 21, 1912.)

1. VENUE (§ 18*)—RESIDENCE OF PARTIES— STATUTORY PROVISIONS—"UNKNOWN."

Where plaintiff knew that defendants' residence, at the time of the contract sued on, was in S., that one of the defendants was attending school outside the state, and that the other defendants were traveling in Europe, and there was nothing known to him to lead him to believe that their absence from home was other than temporary, their residence was not "unknown" to him, within the meaning of Rev. St. 1895, art. 1194, subd. 3, authorizing suit in a county other than that of the defendant's residence, when such residence is unknown.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 32; Dec. Dig. § 18.*

For other definitions, see Words and Phrases, vol. 8, p. 7186.]

2. VENUE (§ 27*)—RESIDENCE OF PARTIES— EFFECT OF ASSIGNMENT OF CAUSE OF ACTION.

Where plaintiff was the president and principal stockholder in a corporation to which defendants were indebted, and was a surety on its note, and knew that the company was insolvent, a finding that a transfer of the debt to him and guaranty of its payment by the corporation, in consideration of his payment of the note on which he was surety, was fictitious, for the purpose of authorizing the bringing of an action at the domicile of the corporation, was supported by the evidence, since he parted with nothing of value as a consideration for the transfer.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 41; Dec. Dig. § 27.*]

3. VENUE (§ 68*)—CHANGE—PLEA OF PRIVILEGE—EVIDENCE.

On a plea of privilege, in an action against a debtor and the assignor of the debt, who guaranteed its payment, where it was claimed that the assignment was fictitious, for the purpose of fixing the venue at the domicile of the assignor, evidence of the assignor's insolvency was material and competent.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 121; Dec. Dig. § 68.*]

4. CORPORATIONS (§ 448*)—RIGHTS ON CONTRACTS WITH INCORPORATORS.

Where, subsequent to the execution of a contract between a partnership and another, the partnership was incorporated, the corporation acquired the rights of the partnership under the contract, and was authorized to assign it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1709, 1789–1792; Dec. Dig. § 448.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by R. E. Brooks against William F. Bonner and others. From a judgment for defendants on their plea of privilege, plaintiff appeals. Affirmed.

Robt. A. John, of Houston, for appellant. Kearful & Hallam, of San Antonio, for appellees.

PLEASANTS, C. J. This suit was brought by appellant against the appellees, Wm. F. Bonner, Emma J. Bonner, Mary A. Bonner, and the Brooks-Gordon Construction Company. The petition alleges that the residence of the appellees Bonner is unknown, and that the Brooks-Gordon Construction Company is a corporation having its domicile and principal office in the county of Harris.

The suit is brought to recover a balance of $3,705.16, alleged to be due upon a contract executed by the defendants Bonner and the Brooks-Gordon Construction Company for the construction by said company of a building upon a lot in the city of San Antonio owned by the defendants Bonner, which balance, it is alleged, was transferred and assigned by said company to appellant and its payment guaranteed by the company.

On January 11, 1911, the appellees Wm. F. Bonner, Emma J. Bonner, and Mary J. Bonner, filed their plea of privilege to be sued in Bexar county, Tex., alleging, among other things, that: (1) The Brooks-Gordon Construction Company was not a necessary party to the suit, and that the allegation that it had its principal office in Harris county, Tex., was for the fraudulent purpose of transferring jurisdiction to the district

---

court of Harris county, Tex., alleging that its principal office was in San Antonio, Tex., Bexar county, and not Harris county, Tex. (2) The prosecution of the suit by appellant against the Brooks-Gordon Construction Company was not done by appellant in good faith, because of the insolvency of the said Brooks-Gordon Construction Company. (3) The assignment, or transfer, and guaranty by the Brooks-Gordon Construction Company of said claim to appellant was a mere sham, was not bona fide, not done in good faith, because the Bonners did not owe the Construction Company the sum claimed, which appellant knew, and because said assignment was but a pretense and a fiction; because said contract entered into by the Brooks-Gordon Construction Company with the Bonners was guaranteed by the appellant himself being upon said company's bond as surety for the faithful performance of said contract.

On March 23, 1911, the appellee the Brooks-Gordon Construction Company, without having been cited, voluntarily filed a general demurrer and a general denial, thereby entering its appearance. On May 11, 1911, the plea of privilege was heard and sustained by the court, and plaintiff's suit was ordered transferred to the district court of Bexar county. From this judgment, the plaintiff prosecutes this appeal.

We deduce from the record the following facts: On September 14, 1909, the Brooks-Gordon Construction Company was a copartnership composed of C. W. Brooks and P. M. Gordon. This copartnership owed the appellant, R. E. Brooks, approximately $15,-000, and had contracts and assets which approximated that amount. Among the assets was the contract to build the residence for the appellees, the Bonners, on a certain lot of land owned by them in San Antonio, Bexar county, Tex.; it being the contract declared upon by appellant in his pleadings. Afterwards, on October 25, 1909, the Brooks-Gordon Construction Company was incorporated. The debt of R. E. Brooks was canceled, and the assets of said copartnership, aggregating $15,000, were put into the corporation as a payment upon its capital stock. The corporation was incorporated for $20,000, and, in lieu of the indebtedness due R. E. Brooks, he took 150 shares of stock of said corporation, assigning one share to an attorney by the name of Robert A. John, of Houston, Harris county, Tex., for drawing the charter of said corporation; the balance of the stock, in shares aggregating $5,000, being subscribed for by P. M. Gordon, but never paid for. The corporation, the Brooks-Gordon Construction Company, prosecuted and completed the contract, or at least claimed the completion of the same, and claimed a balance due by the appellees, the Bonners, in the sum of $3.706.16, and through its president, R. E. Brooks, on

September 10, 1910, demanded payment of the same. The said corporation, the said Brooks-Gordon Construction Company, had as its sole stockholders R. E. Brooks, owning 149 shares, Robert A. John, owning one share, and P. M. Gordon, owning, but not having paid for, 50 shares, each of the par value of $100. The corporation was properly chartered and organized, a board of directors elected on May 27, 1910, consisting of P. M. Gordon, Robert A. John, and R. E. Brooks. The board of directors met and elected R. E. Brooks its president, P. M. Gordon its vice president and general manager, and Robert A. John its secretary and treasurer. The stockholders and directors adopted a set of by-laws at its meeting on October 30, 1910, among which by-laws the following is cited, which is pertinent and material: "Section 6. The general manager of this corporation shall have the active management of its affairs, subject to the control of its board of directors, and such general manager shall be authorized in the name of the corporation to enter into all such contracts and obligations for the erection and repair of any building or structure, or for the purchase of any material to be used therein, and to employ or discharge all such labor as may be necessary to carry on the business of said corporation, and to execute all bonds and other contracts or obligations that may be deemed advisable or necessary in the conduct of said business, and to sign the name of said corporation to the same."

It is undisputed that this transaction was had before any dispute arose between the Construction Company and the Bonners as to whether they had complied with their contract in erecting the building as agreed upon. Afterwards, on the 16th day of September, 1910, the Brooks-Gordon Construction Company, acting through its general manager, P. M. Gordon, assigned the balance claimed by the said Construction Company to be due to the said Construction Company by the said Bonners to R. E. Brooks by written assignment, in which the said Construction Company guaranteed the payment of the same. It was undisputed that the appellant, R. E. Brooks, at the time of the assignment, was a large creditor of the said Brooks-Gordon Construction Company, and, among other things, was an indorser on paper due by that company in the sum of $5,-000, executed by said company, of date July 10, 1910, and payable to the order of the National Bank of Commerce at San Antonio, Tex., on the 10th day of October, 1910, which said note the said R. E. Brooks paid the said bank in full when the same matured.

At the time the contract for the erection of the building was executed, and for a number of years prior thereto, the defendants Bonner resided in Bexar county, and that

was their residence at the time this suit was filed; but all of them were at that time temporarily absent from their home. William F. Bonner was attending a medical school at Philadelphia, Pa., and Emma J. Bonner and Mary Bonner were traveling in Europe. Appellant knew that the residence of said defendants was in San Antonio, and was informed of their temporary address in September, 1910. At the time he filed this suit, in December, 1910, he did not know the then address of the traveling defendants. If he did not know that the defendants' absence from the state was only temporary, he could have ascertained that fact by the exercise of reasonable diligence. The domicile of the Brooks-Gordon Construction Company is in Harris county, and was in said county when this suit was filed.

The trial judge, in the judgment rendered by him, recites the conclusions of fact upon which his judgment is based, and among such conclusions is the following: "However honestly the plaintiff may have believed that he obtained the right to sue in this county by the proceedings recited in his petition, I cannot escape the conclusion that the assignment was not made in good faith, in the legal meaning of that term, but that it was to all intents and purposes fictitious."

The Brooks-Gordon Construction Company was insolvent when it transferred the contract to appellant. Appellant testified that the company owed him $15,000 in addition to their liability on their guaranty of the claim involved in this suit, and "that the company will never be able to pay him any of said indebtedness."

[1] The first assignment of error complains of the finding of the trial court that the residence of the defendants Bonner was not unknown to plaintiff at the time he brought his suit. As we have before stated, the residence of said defendants was in San Antonio, Bexar county, at the time the suit was brought, and that place had been their residence for a number of years. William F. Bonner was attending a medical school in Philadelphia, and had been for two years, but came home each year during the school vacation, and intended, when he finished school, to practice his profession in San Antonio. Emma J. and Mary A. Bonner were traveling in Europe .for the benefit of the latter's health, and both intended to return to their San Antonio home when the health of Miss Mary Bonner would permit. Appellant knew that the residence of the defendants, at the time the contract for the construction of the building, which was built for their residence, was executed, was at San Antonio. He also knew, when he brought this suit, that William F. Bonner was attending school in Philadelphia, and that the sisters, Emma and Mary, were traveling. We do not think it can be said, under these facts, that the residence of these parties

was "unknown" to the plaintiff, as that term is used in subdivision 3 of article 1194 of the Revised Statutes. There was nothing in the facts known to him to lead him to the conclusion that the absence of the defendants from their home in San Antonio was not merely temporary; and the fact that he did not know and could not obtain the temporary address of the Misses Bonner at the time his suit was filed does not affect the question of his knowledge of their residence. It is true that a person may have more than one "residence," in the sense in which that term is used in the venue statute; and in such case he may be sued in either or any of his different places of residence. Pearson v. West, 97 Tex. 238, 77 S. W. 945; Armstrong v. King, 130 S. W. 629. We do not think, however, that an absence from home for a part of each year for several years, for the purpose of attending school, would fix the residence of the student at the place of school, so as to confer venue, in a suit against the student, at that place. If the law is otherwise, and William F. Bonner, in the purview of the venue statute, had a residence both at San Antonio and at Philadelphia, the assignment cannot be sustained, because the appellant knew the facts in regard to his attendance upon the Philadelphia school; and the trial judge did not err in his finding that the residence of said defendant was not unknown to the plaintiff. It is clear that the Misses Bonner had no residence elsewhere than at San Antonio.

[2] The second assignment of error complains of the finding of the trial judge that the assignment by the Brooks-Gordon Construction Company to appellant of the claim sued on was fictitious. We do not understand the trial judge to find that appellant's statement as to the transaction between himself and the company in regard to the transfer of the claim is not true; and we do not think there is any evidence which tends to contradict appellant's testimony in regard to this transfer. He testified that, in consideration of the transfer of the claim to him by the company and the guaranty of its payment. he assumed $3,705.16 of an indebtedness of $5,000 due by the company to a San Antonio bank, and paid said indebtedness when it became due. There is nothing in the evidence tending to contradict this testimony. But the undisputed evidence further shows that appellant was surety upon said note for $5,000, and was bound to and did pay the whole of the note when it be-came due. The company was insolvent, and he was its largest creditor and held three-fourths of its stock. He testified that the company owed him $15,000 in addition to the amount paid by him on said $5,000 note, and that it would never be able to pay him any of said indebtedness. Such being the undisputed facts, we do not think he gave up or parted with anything of value in consid-

eration of the transfer of the claim to him; and, while the transfer was in fact made, it was not real in the sense that it was a bona fide business transaction by which one person, for a valuable consideration, acquired title to a claim held by another against a third party. If such had been the character of the transaction, it would be immaterial that both parties to the transaction knew that the purpose of the transferror in assigning and guaranteeing the payment of the claim was to fix the venue of a suit against the debtor in the county of guarantor's residence. Appellant was the president of the insolvent company, owned three-fourths of its stock, and most of its indebtedness was for advances made by him. He had tried, as president of the company, to effect a settlement of the claim, and, when he failed to do so, had the company transfer the claim to him and guarantee its payment, in order that he might sue thereon in Harris county. He obtained this transfer from a company which, though incorporated and having two other nominal stockholders, was in fact owned and controlled by him, and obtained it without giving anything of value therefor. He was bound as surety to pay the $5,000; and from his own testimony the $3,705.16 of that amount, which he released the company from its obligation to pay, could never have been paid by it, and it would never be able to pay any of its indebtedness to him. The fact that he paid no consideration for the transfer is not conclusive; but it is a circumstance which can properly be considered in determining the question of whether the transaction was bona fide. Pearce v. Wallis, 124 S. W. 496.

We think it would be an unreasonable extension of the doctrine of Turner v. Brooks, 2 Tex. Civ. App. 451, 21 S. W. 404, and the line of cases following that case, to hold that the evidence in this case requires a finding that the transfer of the claim by the company to appellant, Brooks, was bona fide. We think the evidence is sufficient to sustain the finding that said transfer was fictitious, and the assignment complaining of such finding cannot be sustained.

As we have before found, the domicile of the Brooks-Gordon Construction Company was in Harris county; and, if the trial court found otherwise, such finding was erroneous, and appellant's third assignment, complaining of the judgment on this ground, would be well taken, if the transfer by the company to appellant had been real; but our conclusion that such transfer was fictitious renders any erroneous finding of the court as to the domicile of the company immaterial.

[3] The fact of the insolvency of the company was material upon the question of whether appellant gave any consideration for the transfer of the claim to him, and the

trial court did not err in admitting evidence of that fact.

[4] The incorporation of the copartnership, styled the Brooks-Gordon Construction Company, placed the title of the partnership in the contract sued on in the corporation, and it was authorized to transfer the contract.

This disposes of all of the questions presented by appellant's brief. We think none of the assignments show any error which requires a reversal of the judgment; and it is therefore affirmed.

Affirmed.