### FLORESVILLE OIL & MANUFACTURING COMPANY v. TEXAS REFINING COMPANY.

Decided April 3, 1909.

#### 1.—Venue—Privilege—Private Corporation—Statute.

Where, in a suit against a private corporation, the petition alleged and the court found on sufficient evidence, that the defendant entered into a written contract of sale which was to be performed in part at least in the county of the suit, and that for a breach thereof by defendant a cause of action arose in plaintiff's favor in that county, an assignment complaining of the action of the court in overruling the defendant's plea of privilege to be sued in the county of its residence, could not be sustained. Revised Statutes, art. 1194, subd. 23.

#### 2.—Evidence—Offer to Compromise.

An offer to compromise a prospective suit, if expressly or impliedly made without prejudice cannot be admitted in evidence when objected to. The reason of the rule is that the law favors the compromise and settlement of controversies without litigation and as the admission in evidence of such offers tends to discourage such settlements, it is against the policy of the law.

#### 3.—Same.

In a suit for breach of a contract of sale, the admission in evidence of an offer by the plaintiff to waive the claim for damages if the defendant would comply with the original contract, was reversible error, although the defendant made no reply to the offer.

#### 4.—Evidence—Sale—Contract in Writing—Pleading—Agency.

Where the contract for the sale of oil was not signed by either party but by the broker alone, and the latter testified to conversations had by him with the manager of the seller on the day of sale tending to show authority from the latter to sell and also confirmation of sale, testimony of the manager of the seller that he held several conversations with the broker on that day, that he gave an option to the broker to sell on that day up to midnight, that the broker made no report to him of a sale or confirmation, and that he did not at any time receive any written notice of a sale of the oil or the writing called "confirmation of sale," and heard nothing of such sale until several days thereafter, was admissible in evidence in connection with the undisputed fact that under the rules of the association to which both parties belonged, when an option is given a sale must be confirmed before midnight of the same day or it is not binding on either party; and it was not necessary to deny the authority of the broker to execute the contract in behalf of the seller, to render it admissible.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*J. E. Canfield and J. S. Sherrill,* for appellant.—Appellee's petition did not allege nor was it proven that the appellant had an agent in Hunt County; in fact the contrary, to wit, that the appellant had no agent in Hunt County, was proven. The paper attached to plaintiff's petition and alleged to be a contract, is not a contract in any sense of the word, and is not signed by the plaintiff or the defendant, by agent or otherwise, and if the alleged contract could by any means be construed as contended by appellee, then it shows upon its face that it was performable in Wilson and not in Hunt County. Thompson v. Locke, 66 Texas, 386; Cohen v. Munson, 59 Texas, 237; Max Lindheim & Bros. v. Muschamp, 72 Texas, 35; Hillard v. Wilson, 65 Texas, 287; Merchants' & Planters' Oil Co. v. Selligson, 4 Texas App. Civ. Cas., 206; Gulf, W. T. P. Ry. v. Browne, 27 Texas Civ. App., 437.

*Geo. S. Perkins,* for appellee.—The appellee having alleged in its petition that John Hamilton & Company as the duly authorized agents of appellant had executed the contract upon which appellee's pleading and suit are founded, and the contract showing on its face that John Hamilton & Company in executing it were acting for and on behalf of appellant if the latter wished to controvert the authority of said persons to make said contract, appellant should have done so by plea verified as required by the statute. Rev. Civ. Stats. (Sayles'), art. 1265, subd. 8; Drew v. Harrison, 12 Texas, 279; Waterworks v. White, 61 Texas, 536; Hunt v. Siemers, 53 S. W., 387.

The rule of law excluding testimony as to efforts made by parties to a dispute to compromise the same, applies to admissions or offers made by the opposing party, and as the testimony of Tassey shows that appellant made no reply to his proposition, the reason for invoking the rule in this instance did not exist. The testimony could not possibly have operated prejudicially to the appellant, and so there was no error in its admission. Railway Co. v. Ragsdale, 67 Texas, 24.

Oral testimony is inadmissible for the purpose of contradicting or varying the terms of a written contract, and this for another reason is true when such testimony imports a denial of the appointment and authority of an agent, whose agency has been properly alleged, and no denial has been made of such agency in the manner and form required by law. Dallas National Bank v. Davis, 78 Texas, 368; Railway Co. v. Jones, 82 Texas, 160; Sanborn v. Murphy, 86 Texas, 441; Smith v. Montgomery, 3 Texas, 205; Self v. King, 28 Texas, 554; Heffron v. Pollard, 73 Texas, 102.

TALBOT, ASSOCIATE JUSTICE.—Appellee brought this suit against appellant in the District Court of Hunt County, Texas, to recover damages for an alleged breach of contract. It was averred that on the 10th day of September, 1906, plaintiff was engaged in the business of buying crude oil and in refining such oil and selling the refined product. That on said date defendant was engaged in the manufacture and sale of crude cotton-seed oil at the town of Floresville in this State,

and, acting by and through its duly authorized agents, John Hamilton & Company in the city of Dallas, Texas, called by 'phone plaintiff's manager at its office in Greenville, said Hunt County, Texas, and sold to plaintiff three tanks of 132 barrels capacity of new, prime, crude cotton-seed oil, at the price of 23½ cents per gallon, f. o. b. Floresville, shipment to be made during the month of October, tanks to be furnished by the plaintiff, and to be loaded by the defendant to their capacity. That on same date and in the same manner the defendant also sold to plaintiff three tanks of 132 barrels capacity of new, prime, crude cotton-seed oil at the price of 23 cents per gallon f. o. b. at the said town of Floresville, shipment to be made during the month of November, tanks to be furnished by plaintiff and loaded by defendant to their capacity. That said sales were duly confirmed by said brokers to plaintiff on the same day by 'phone message and telegraph message, and by mailing the plaintiff and defendant written copies of the contract in the usual form used by the brokers, as is usual and customary in such cases, and copies of those so mailed to the plaintiff are hereto attached, marked exhibits "A" and "B," and made a part hereof, said written contracts were executed by authority of defendant. That by the terms of said contracts the defendant was to draw sight drafts on the plaintiff free from exchange payable at said city of Greenville with bill of lading attached, for full amount of the invoices, defendant guaranteeing weights and quality of the oil at Greenville. That said contracts were by express terms subject to the Texas Cotton-Seed Crushers' Association rules. It was further alleged that the defendant failed and refused to comply with the said contracts for the delivery to the plaintiff of the six tanks of oil, either in whole or in part, to plaintiff's damage $2,000. That on or about the 19th of October, 1906, plaintiff learned from the defendant that it would not comply with its contract or any part thereof, and on October 20th gave the defendant notice that the plaintiff intended to purchase and would purchase on open market for the account of the defendant six tanks of oil, three to be delivered in October and three in November, to cover defendant's contract with plaintiff, and that defendant would be charged with the difference in price, if any, which plaintiff was authorized to do under and by virtue of the said terms of said contracts with the defendant. That plaintiff purchased for the account of defendant three tanks of prime cotton-seed oil for October shipment on the 20th day of October, 1906, at the price of 28 cents per gallon f. o. b. two tanks at Cooper, Texas, and one tank at Lone Oak, 28 cents per gallon being then the lowest market price for which said oil for said shipment could be obtained; and on the 23d of October plaintiff purchased for the account of the defendant three tanks of oil for November shipment at the rate of 28 cents per gallon therefor f. o. b.; two tanks from the Farmers' & Merchants' C. O. Mills, Mt. Pleasant, Texas, and one tank at Roxton, Texas, the price paid therefor being the then lowest market price for which said oil for said shipment could be obtained. Said six tanks being of the grade and quality of the oil originally purchased from defendant. That the difference in price which the plaintiff had to pay for said oil, which was the mar-

ket price and the price at which defendant had so contracted to deliver the same to the plaintiff, was $1,881, for which it prayed judgment.

The defendant filed a plea of privilege to be sued in the county of its residence, namely, Wilson County, Texas, and pleaded general and special exceptions, a general denial and special matters not necessary to state. The plea of privilege was overruled and the case proceeded to trial upon its merits. When the evidence was closed the court directed the jury to return a verdict in favor of the plaintiff, and from the judgment entered thereon this appeal is prosecuted.

The first assignment of error complains of the court's action in overruling defendant's plea of privilege to be sued in the county of its residence. This assignment is not, in our opinion, well taken. Exception 23, article 1194 of the Revised Statutes, provides among other things that suits against any private corporation may be prosecuted in any county in this State in which the plaintiff's cause of action or a part thereof arose. The defendant was such a corporation, and while it had no agent in Hunt County, yet the allegations of the petition and the evidence adduced were sufficient to support the court's conclusion that a written contract for the sale and purchase of the oil in question, and upon which this suit was founded, had been entered into between the plaintiff and defendant, which was to be performed at least in part in Hunt County, and that for a breach thereof by defendant a cause of action arose in favor of plaintiff in that county. (Seley v. Williams, 20 Texas Civ. App., 405.) The evidence showing prima facie such a contract, we would not be warranted in reversing the case on this assignment. This also disposes of appellant's second and third assignments of error.

E. H. Tassey, a witness for the plaintiff, was permitted to testify over the objections of defendant as follows: "We notified defendant by wire on October 23d that we had purchased for its account six tanks of oil in question, charging them with the difference in price, and giving it the names of the mills from which we had purchased the six tanks of oil. We also stated in said wire that we would make no claim for this difference in price provided they would answer by telegram on that date stating they would fill our contract, and referring to our letter of October 19th. We meant by this that in the event the defendant would fill its contract with us, we would be willing to waive claim for the difference in the contract price and the price at which we had purchased the six tanks for their account, and receive the six tanks we had bought for their account for the account of ourselves. Said telegram marked 'Exhibit U' is a copy of the telegram, dated October 23d, referred to above, and which we sent defendant on said date. We received no reply to it." This testimony was objected to on the ground that it showed an offer to compromise the matter in dispute between the plaintiff and defendant, and was irrelevant and improper to go before the jury. We think this contention correct. The testimony seems to fall within the well established rule "that an offer to compromise a prospective suit, if expressly or impliedly made without prejudice, can not be admitted in evidence when objected to." The reason of the rule is, that the law favors the compromise and set-

tlement of controversies without litigation, and as the admission in evidence of such offers tends to discourage such settlements, they are against the policy of the law, and should be excluded. (International & G. N. Ry. Co. v. Ragsdale, 67 Texas, 24.)

But it is argued by appellee that inasmuch as it appears that appellant made no reply to appellee's proposition, "the reason for invoking the rule in this instance did not exist; that the testimony could not possibly have operated prejudicially to the appellant and there was no error in its admission." We do not regard this as a satisfactory answer to the contention. The testimony objected to did not tend to show the admission on the part of appellant of any material fact involved in the suit, but disclosed a mere proposition of settlement. In the case cited it is said that "numerous authorities may be cited to show that the admission of a fact pending a negotiation for compromise may be admitted; but we have found none that a proposition which has not been accepted and became a contract is legal testimony." Neither do we agree to the proposition that the testimony could not possibly have operated prejudicially to the appellant. On the contrary, we think it was clearly calculated to injuriously affect the rights of appellant.

We are also of the opinion that appellant's fifth assignment of error is well taken. After the witness, W. C. Bruff, had testified that he was manager for appellant on or about the 10th day of September, 1906, and that on said date he had a conversation with John Hamilton & Company, of Dallas, with reference to the sale of some cotton-seed oil, and that he gave to said Hamilton & Company an option on six tanks of oil to sell the same during that day and up to midnight of that night, and that he had other conversations with him on the same day, the appellant then offered to prove by said witness that nothing was said by said Hamilton & Company in the second or third conversation with reference to the sale of said oil, except that in the second conversation he told him that he had not yet heard from the people to whom he expected to sell; that said Hamilton & Company did not at any time during that day report to him or the defendant confirming the sale of any oil, and that he did not at any time receive any written notice of the sale of said oil, or the letter or contracts called the confirmation of sale, as claimed by the plaintiff and attached to plaintiff's petition; that said Hamilton & Company did not on that day, or at any other time, confirm the sale of said oil, and that said Bruff did not hear anything of said sale until several days thereafter. This testimony, as shown by the bill of exception reserved to the court's action, was objected to on the grounds: (1) that it varied the terms of the written contract sued on; (2) that defendant had not denied under oath the execution of said contract; (3) that there were no pleadings to authorize the introduction of said testimony, and it was irrelevant and immaterial. Some one or all of these objections were by the trial court sustained and the testimony offered excluded. This was error. It was not essential to the admissibility of the testimony offered that a denial under oath of the authority of John Hamilton & Company to make the alleged contract in behalf of appellant should have been filed by it. The contract was not signed by either the plaintiff or defend-

ant, but alone by John Hamilton & Company, as brokers. It was not sufficient without evidence aliunde to show that it had been executed by authority of appellant and therefore binding upon it. The evidence was sought to be supplied by the testimony of John Hamilton. He testified in behalf of appellee, among other things, in effect, that he talked over the telephone at Dallas with the manager of appellant, who was at Floresville, three times on the 10th day of September, 1906; the first time at 11:30 o'clock in the morning, the second time at 12:37 o'clock p. m., and the third time at 2:50 p. m.; that according to the memorandum which his firm keeps of daily conversations with the different mills in the State, appellant gave to his firm in the first conversation an offer of three tanks of October oil at 23½ cents, two tanks of November oil at 23 cents, f. o. b. cars at Floresville; that in the second conversation he advised appellant of the sale of the five tanks of oil to appellee and at that time the two tanks of November oil were increased to three tanks. He further testified that in making the sale of the oil to appellee his firm was acting for appellant as brokers and by the authority given them over the 'phone in the conversations stated; that said sales were confirmed the day made, over the telephone and by mailing the contracts sued on to appellant and appellee, and that such course was the usual custom in such transactions. On cross-examination of this witness he testified in this connection that the rule by which his firm was governed in making the sales of the oil to appellee, required such sales to be confirmed by the seller on the day they were made, and if not they were not binding. The undisputed testimony further showed that appellant and appellee were members of the Texas Cotton-Seed Crushers' Association; that the sales to them of the oil in question were made under the rules of that association, and that said rules governing option sales, etc., stipulated that, unless such a sale is confirmed by 12 o'clock at night, on the day the option is given, it is not binding upon either party. E. H. Tassey, appellee's manager, testified: "In the event that John Hamilton & Company secured from the defendant, on which there was no time limit (and there was none), an offer on the six tanks of oil at price and terms specified, and did not give the defendant their reply verbally or by 'phone or by telegraph on or before midnight of the day on which the offer is secured, the trade would be considered off." In addition to the foregoing testimony, the contracts upon which appellee's suit is founded stipulate, in effect, that the sales alleged are governed by the rules of the Texas Cotton-Seed Crushers' Association. Clearly, in this state of the evidence the testimony offered by appellant and excluded by the court was material and admissible. It was not offered with a view of merely varying the terms of the purported contracts declared on or to show want of authority in John Hamilton & Company to make such contracts, but for the purpose of showing that said contracts, although signed by John Hamilton & Company and by them delivered to appellee, did not take effect and become binding because an important condition upon which their completion and binding force depended, and which was well known to and understood by appellee to be essential to their vitality and efficacy, was not complied with. If the sale of the oil under the option given by the appellant to John

Hamilton & Company was not reported to appellant by or before midnight of September 10, 1906, as prescribed by the rules of the Texas Cotton-Seed Crushers' Association, then the execution and delivery by the said John Hamilton & Company of the instruments sued on were not the contracts of appellant. This was the issue tendered by the testimony excluded, and no denial of the authority of John Hamilton & Company to execute in behalf of appellant said instruments or to make a sale of the oil was necessary to warrant the admission of said testimony. It follows that the testimony should have been admitted and the question involved submitted for the determination of the jury by an appropriate instruction.

We are further of the opinion that the court erred in excluding the testimony of the witness J. E. Canfield as to the contents of a letter claimed to have been written by John Hamilton & Company to appellant in reference to the matter involved in this suit. The loss of the letter was sufficiently established to authorize the admission of parol evidence of its contents, and it does not appear that its authenticity was questioned. It was material upon the issue upon which the testimony of the witness Bruff was offered as shown in a former part of this opinion, and if we are correct in our holding that the testimony of Bruff was admissible, then for the same reasons the testimony of the witness Canfield was admissible.

The judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*